Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOBOKEN YACHT CLUB LLC,

*Plaintiff,*

v.

MARINETEK NORTH AMERICA INC.,

*Defendant.*

Civil Action No. 19-12199 (JMV)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case concerns a business dispute between Plaintiff Hoboken Yacht Club LLC ("Hoboken Yacht") and Defendant Marinetek North America Inc. ("Marinetek") over a floating dock system. Defendant claims that the Court lacks subject matter jurisdiction to resolve Plaintiff's claims because the parties agreed to arbitrate their disputes. Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). D.E. 3. The Court reviewed the parties' submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to dismiss is **GRANTED**.

---

[1] Plaintiff's Complaint will be referred to as "Compl." (D.E. 1-1); Defendant's brief in support of its motion will be referred to as "Def. Br." (D.E. 3-4); Plaintiff's brief in opposition will be referred to as "Pl. Opp." (D.E. 6); and Defendant's reply brief will be referred to as "Def. Reply" (D.E. 7).

## I. FACTUAL BACKGROUND[2]

Plaintiff Hoboken Yacht, a New Jersey LLC, owns the Shipyard Marina in Hoboken, New Jersey. Compl. ¶¶ 3, 7. Plaintiff decided to build a floating dock system for the shipyard in 2014. *Id.* ¶ 9. Defendant Marinetek, a Florida corporation, submitted a proposal to design and furnish the dock system and was awarded the project. *Id.* ¶¶ 4, 10-18. On December 9, 2015, Plaintiff and Defendant entered into a contract agreement ("the Contract") "pursuant to which [Plaintiff] would pay [Defendant] $750,000 for the design, fabrication, and delivery of the floating dock system." *Id.* ¶ 19.

Plaintiff's Complaint summarizes the contractual provisions related to Defendant's responsibilities, including a five-year warranty. Compl. ¶¶ 19-23. Section 7.10 of the Contract holds that the terms of the agreement "shall be construed in accordance with, and subject to the Laws of Florida." Contr. § 7.10. Section 7.11 of the Contract includes the following arbitration provision for disputes arising out of the Contract:

> Any dispute arising out of or relating to the performance, validity, or termination of the Contract and/or these Terms and the commercial consequences thereof, *shall be finally settled by arbitration* in accordance with the Arbitration Rules of the Florida State. *The arbitration* shall take place in St. Petersburg, Florida, USA and the proceedings shall be conducted, and the award shall be rendered in the English language. There shall be one arbitrator. *The arbitration award shall be final and binding* on both Parties and not subject to any appeal.

---

[2] The factual background is taken from Plaintiff's Complaint, D.E. 1-1, as well as any documents referenced, relied on, or attached to Plaintiff's Amended Complaint. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Plaintiff's claims are based on a contract between Plaintiff and Defendant which was attached by Defendant in its motion to dismiss. *See* Compl. ¶ 18; D.E. 3-2 ("Contr."). As a result, the Court properly considers the underlying contract at this stage.

2

*Id.* § 7.11 (emphases added).

Defendant delivered the floating dock system in April 2016, but the system experienced "several failures" after installation. Compl. ¶¶ 24-25. Defendant refused to make repairs, pursuant to the five-year warranty, until Plaintiff made its final payment of $35,649 under the Contract. *Id.* ¶ 27. Upon Plaintiff's final payment, Defendant made the repairs. *Id.* ¶ 28. However, the system exhibited failures again in November 2017. *Id.* ¶¶ 29, 33. Plaintiff alleges that Defendant agreed to make repairs only if Plaintiff paid Defendant's travel expenses. *Id.* ¶ 31. Plaintiff paid the travel expenses, and Defendant made the repairs to the dock system. *Id.* ¶ 32.

In December 2018, the system once again exhibited failures. *Id.* ¶ 33. Plaintiff claims that although Defendant acknowledged the failures and claimed to be securing parts for repair, Defendant "rejected [Plaintiff's] warranty claim and has refused to make repairs." *Id.* ¶¶ 36-42. However, Plaintiff noted that a "hot-dipped-galvanized rod [Defendant] had ordered" to make repairs arrived at the shipyard. *Id.* ¶ 43. Plaintiff claims that it notified Defendant on March 15, 2019 that Defendant had "breached the Contract and the warranty by failing to make repairs." *Id.* ¶ 44.

## II. PROCEDURAL HISTORY

On March 26, 2019, Plaintiff filed a Complaint in the Superior Court of New Jersey, Hudson County Law Division. *Id.* at 3. The Complaint included the following eight counts: (1) breach of contract, (2) breach of express warranty, (3) breach of the implied covenant of good faith and fair dealing, (4) breach of the implied warranty of good and workmanlike performance, (5) violation of Consumer Fraud Act (N.J.S.A. 56:8-1), (6) negligence, (7) fraudulent inducement, and (8) negligent misrepresentation. *Id.* ¶¶ 52-94.

On May 6, 2019, Defendant filed a notice of removal in this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. 1331(a). D.E. 1. On May 10, 2019, Defendant filed the current motion to dismiss pursuant to the arbitration agreement in the Contract. D.E. 3. Plaintiff filed opposition, D.E. 6, to which Defendant replied, D.E. 7.

## III. LEGAL STANDARD

Defendant claims that the Court does not have subject matter jurisdiction over this claim because the parties agreed to arbitrate their disputes in Section 7.11 of the Contract.[3] Def. Br. at

---

[3] Defendant refers to courts, including in this District, that have found dismissal appropriate based on lack of subject matter jurisdiction when a plaintiff's claims are subject to arbitration. Def. Br. at 5 (citing *Asbell v. Integra Life Sciences Holdings Corp.*, No. 14-677, 2014 WL 6992000, at *2-4 (D.N.J. Dec. 10, 2014)). Defendant states that other courts "have found that a motion to compel arbitration made should be treated as a motion to dismiss under Rule 12(b)(6) for failure to state a claim[.]" *Id.* Defendant explains that it is "moving to dismiss, not to compel arbitration, because the contractually-mandated place of arbitration is beyond the jurisdiction of this Court." *Id.* As Judge Simandle opined in a procedurally similar case brought under 12(b)(1) for failure to arbitrate, "[w]ere this Court to dismiss the action because the wrong document was filed, the defendants would undoubtedly file a motion to compel arbitration and the parties would present the same arguments as presented here. Therefore, this Court will avoid such a 'hypertechnical' ruling that would inevitably lead to duplicative litigation[.]" *Thompson v. Nienaber*, 239 F. Supp. 2d 478, 484 (D.N.J. 2002). For the same reasons, this Court will proceed on the theory of lack of subject matter jurisdiction.

Yet, in light of the Supreme Court's decision in *Atlantic Marine Const. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013), this Court has doubts that Rule 12(b)(1) is the appropriate section under which to proceed. *Atlantic Marine* concerned the enforcement of a forum-selection clause in a contract. *Id.* at 46. Atlantic Marine attempted to have the suit dismissed under Rule 12(b)(3) for improper venue, but the Supreme Court observed that in determining whether venue is proper, a federal court only considers 28 U.S.C. § 1391, the federal venue statute. *Id.* at 55-59. The Supreme Court continued that the appropriate mechanism to enforce a forum-selection clause (when the matter is nevertheless filed in an appropriate federal venue) is a motion to transfer to another federal venue pursuant to 28.U.S.C. § 1404 or a motion to dismiss for *forum non conveniens* when the matter should be heard in a non-federal venue. *Id.* at 59-61.

The reasoning of *Atlantic Marine* would apparently be applicable here. In other words, in determining whether a federal court has subject matter jurisdiction, a court should only determine if jurisdiction is appropriate pursuant to the relevant federal statutes, such as 28 U.S.C. §§ 1331, 1332. In other words, either a federal court has subject matter jurisdiction or it does not, regardless of any agreement between the parties. If the Court does have subject matter jurisdiction, then a

4

1. Pursuant to Defendant's motion, this Court proceeds on the theory of lack of subject matter jurisdiction.[4] "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. Courts may use Rule 12(b)(1) to decide whether to dismiss a suit by virtue of an arbitration agreement between the parties." *Asbell*, 2014 WL 699200 at *2-4 (citing *Daly v. Norfolk Southern R. Co.*, No. 09-4609, 2011 WL 2559533, at *1 (D.N.J. June 27, 2011) (citations omitted)).

## IV. ANALYSIS

Defendant claims that the Complaint should be dismissed because the Federal Arbitration Act ("FAA") governs the parties' arbitration agreement and because the agreement requires arbitration of Plaintiff's claims. Def. Br. at 5-8. The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq.*). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). The FAA governs any "agreement to arbitrate in a matter that is 'within Congress' power to reach under the Commerce Clause.'" *Barbour v. CIGNA Healthcare of N.J., Inc.*, No. 02-417, 2003 WL 21026710, at *3 (D.N.J. Mar. 3, 2003); *see also* 9 U.S.C. § 2 (pursuant to the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration

---

party may nevertheless assert the appropriate motion to enforce an arbitration clause as to state arbitration.

[4] Should the Third Circuit find that it is inappropriate to let this matter move forward as a motion to dismiss pursuant to Rule 12(b)(1), this Court will grant Defendant leave to bring the appropriate motion.

5

a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable[.]").

A dispute must be arbitrated pursuant to the FAA if (1) "a valid agreement to arbitrate exists" and (2) "the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey, & Chilcote, PC*, 560 F.3d 156, 160 (3d Cir. 2006). When deciding whether a valid agreement to arbitrate exists, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The FAA instructs courts "to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Pursuant to Section 7.10 of the Contract, the applicable law is Florida state law. Contr. § 7.10.

Defendant contends that the arbitration agreement requires arbitration of Plaintiff's claims because it is clear (1) "that a valid agreement to arbitrate exists" and (2) "that Plaintiff's dispute falls within the scope of that agreement, namely, the comprehensive provision in the Agreement, which provides that the parties agree to 'final and binding' arbitration of 'any dispute arising out of or relating to'" the Contract. Def. Br. at 7. Plaintiff contests the validity of the Contract. Specifically, Plaintiff argues that there is no valid agreement to arbitrate because (1) "[t]he arbitration provision is ambiguous with respect to whether the parties agreed to mandatory or permissive arbitration" and (2) "there is no meeting of the minds as to an arbitral forum." Pl. Opp. at 2-8. Plaintiff asserts that the arbitration provision is ambiguous because in stating that arbitration will proceed "in accordance with the Arbitration Rules of the Florida State," it is not clear whether the parties were referring to the Florida Arbitration Code or the Florida Rules of Civil Procedure. *Id.* at 4-5. Plaintiff adds that "it is reasonable to find that the arbitration

provision's reference" refers to Florida Rule of Civil Procedure 1.830, which provides for "Voluntary Binding Arbitration." *Id.* Furthermore, Plaintiff argues that the arbitration provision is invalid because it only identifies a location, St. Petersburg, Florida, but "fails to identify the arbitral forum" that will administer the arbitration. *Id.* at 6.

The Florida Supreme Court has found that "[a]rbitration law that affects interstate commerce in Florida is governed by two acts – the Federal Arbitration Act [] and the Florida Arbitration Code." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 461 (Fla. 2011) (citing Fla. Stat. § 682.02).[5] Specifically, "[i]n Florida, an arbitration clause in a contract involving interstate commerce is subject to the Florida Arbitration Code (FAC), to the extent that the FAC is not in conflict with the FAA." *Id.* at 463-64. Plaintiff does not dispute that the Contract involved interstate commerce, so the FAC controls. The FAC provides that an arbitration provision is "valid, enforceable, and irrevocable except upon a ground that exists at law or equity for the revocation of a contract." Fla. Stat. § 682.02(1).[6] Section 7.11 of the Contract itself uses mandatory, not permissive, language and states that an arbitration award is final and binding. The section provides, in part, that "[a]ny dispute ... shall be finally settled by arbitration ... [t]he arbitration award shall be final and binding on both Parties and not subject to any appeal." Contr. § 7.11. Under Florida law, the parties' use of the word "shall" indicates that arbitration is mandatory, not permissive. *See Townsend v. R.J. Reynolds Tobacco Co.*, 192 So. 3d 1223, 1229

---

[5] As of 2013, the FAC has been referred to as the Revised Florida Arbitration Code. Fla. Stat. § 682.01.

[6] The FAC also contains a provision that permits a party to waive, under certain circumstances, an arbitration agreement. Fla. Stat. § 682.014. The provision is not applicable because Defendant is seeking to enforce the arbitration agreement here.

7

(Fla. 2016) ("Generally, the word 'shall' is interpreted as mandatory in nature."). Therefore, in light of Section 7.11 of the Contract, the FAC requires mandatory and binding arbitration.

Plaintiff also argues that the arbitration provision is invalid because it fails to identify an arbitral forum. Pl. Opp. at 6. Plaintiff relies extensively on a New Jersey case, *Flanzman v. Jenny Craig Inc.*, 456 N.J. Super. 613, 617 (App. Div. 2018). Yet, as noted, Florida law controls. Plaintiff also cites a Florida case which finds that the essential terms of an arbitration agreement include "the form and procedure for arbitration." *Davis v. Hearthstone Senior Communities, Inc.*, 155 So. 3d 1232, 1234 (Fla. Dist. Ct. App. 2015). Defendant responds that the FAC itself "provides a comprehensive set of procedures for conducting an arbitration, including the initiation of arbitration, appointment of arbitrators, the taking of discovery, the arbitration hearing, issuance of an award, and confirmation of the award." Def. Reply at 6 (citing Fla. Stat. §§ 682.01 et seq.).

*Premier Real Estate Holdings, LLC v. Butch* supports Defendant's assertion that the FAC itself "fills in the 'gaps' or missing procedures" of an arbitration agreement. 24 So. 3d 708, 710-11 (Fla. Dist. Ct. App. 2007). *Butch* found that an arbitration agreement that failed to designate an arbitration organization or the specific rules governing arbitration "did not invalidate the arbitration clause" because the FAC "sets forth the rules and procedures for arbitration in the event an arbitration clause is silent on such matters." *Id.* at 710. A critical factor in upholding the arbitration provision in the *Butch* decision was that the provision was to be construed under Florida law. *Id.* at 711; *see also Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So. 3d 163, 166 (Fla. Dist. Ct. App. 2014). Here, the Contract likewise provides that Florida law controls. As a result,

the correct arbitral form can be determined by the FAC.[7] For the reasons set forth, the Court finds that a valid agreement to arbitrate exists.

The second factor that a Court must examine to determine whether a dispute must be arbitrated pursuant to the FAA is whether "the particular dispute falls within the scope of that agreement." *Kirleis*, 560 F.3d at 160. Section 7.11 of the Contract states that "[a]ny dispute arising out of or relating to the performance, validity, or termination of the Contract and/or these Terms and the commercial consequences thereof, shall be finally settled by arbitration[.]" Contr. § 7.11. The arbitration clause is broad in scope. *See Grektorp v. City Towers of Fla., Inc.*, 644 So. 2d 613, 614 (Fla. Dist. Ct. App. 1994) (describing an arbitration provision referring to "any controversy ... involving the construction or application of any of the terms, provisions, or conditions of this Agreement" as a "broad arbitration agreement"); *see also Simpson v. Cohen*, 812 So. 2d 588, 590 (Fla. Dist. Ct. App. 2002) ("Contract language agreeing to arbitrate '[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof' has been found to be broad enough to encompass a claim that the execution of an agreement itself was procured by fraud."). The Court agrees with Defendant that all of Plaintiff's claims are covered by this broad-reaching arbitration agreement. Def. Br. at 7-8 (citing *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000)). Given the broad language in Section 7.11, the second element is easily met. The Contract concerned the floating dock system, and that system is the basis for Plaintiff's suit. Plaintiff's claims against Defendant as to the floating dock system fit squarely within Section 7.11.

---

[7] The FAC, for example, contains a provision that permits a court of competent jurisdiction to "appoint one or more arbitrators, if: (a) the parties have not agreed on a method[.]" Fla. Stat. § 682.04(2)(a). The FAC similarly provides for the process of conducting an arbitration hearing. *Id.* § 682.06.

9

## V. CONCLUSION

For the reasons stated above, the motion to dismiss filed by Defendant, D.E. 3, is GRANTED and this matter is DISMISSED. Because the Court has found that the arbitration provision in the Contract controls, any attempted amendment of the Complaint would be futile. Plaintiff is not granted leave to file an amended pleading. An appropriate Order accompanies this Opinion.

Dated: December 26, 2019

                                                    _____
                                                    John Michael Vazquez, U.S.D.J.